12118

WILLIAMSON v. ASKIN & MARINE CO.

(136 S. E., 21)

1. LIBEL AND SLANDER—LANGUAGE ALLEGED TO BE DEFAMATORY MUST BE CONSTRUED AS A WHOLE.—Language alleged to be defamatory must be construed in connection with other parts of conversation and published matter, written or printed.

2. LIBEL AND SLANDER—WHETHER LETTER OF COLLECTION AGENCY WAS ACTIONABLE AS LIBEL HELD FOR JURY.—Whether letter, written by collection company to alleged debtor, considered in connection with other communications and circumstances of case, was actionable as libel, *held* for jury.

3. LIBEL AND SLANDER—CHARGING OBTAINING GOODS OR MONEY UNDER FALSE PRETENSES IS ACTIONABLE PER SE.—To charge one with having committed crime of obtaining goods or money under false pretenses is actionable per se.

4. LIBEL AND SLANDER—WORDS NECESSARILY INFERRING COMMISSION OF CRIME ARE ACTIONABLE.—If, taking all words together in their proper meaning, necessary inference is to charge crime, they are actionable.

Before TOWNSEND, J., Richland, September, 1925. Reversed and remanded for new trial.

Action by Mrs. Della Williamson against the Askin & Marine Company and another. Judgment for defendants on demurrer to the complaint, and plaintiff appeals.

*Messrs. Nelson & Mullins, Cooper & Winter* and *J. B. McLaughlin,* for appellant, cite: *Distinction between actionable character of written and spoken words:* 132 S. E., 584; 71 S. C., 112; 91 U. S., 225; 23 L. Ed., 308; 181 Ky., 487; 205 S. W., 558; 3 A. L. R., 1594; 145 Ky., 459; 140 S. W., 661; 36 L. R. A. (N. S.), 974. *Publications of defendant libelous per se:* 132 S. E., 584; 181 Ky., 477; 205 S. W., 558; 3 A. L. R., 1394; 77 Wis., 236; 47 N. W., 881; 9 L. R. A., 86; 31 Minn., 268; 17 N. W., 387; 2 B. C., 279; 1 Ill. App., 130; 22 Ont. Rep., 177. *Words implying crime and so understood are slanderous:* 6 Rich. L., 431. *Where libelous nature of words is doubtful question is for jury:* 93 S. C., 467; 231 U. S., 588; 58 L. Ed., 384; 250 U. S., 290; 63 L. Ed., 987.

*Messrs. E. A. Blackwell* and *R. Beverly Herbert,* for respondents, cite: *Case controlled by* 132 S. E., 587. *Case distinguished:* 132 S. E., 584.

December 8, 1926.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages based on alleged libel.

The complaint sets forth that on or about December 15,

1922, the plaintiff purchased, on credit, certain merchandise from the defendant Askin & Marine Company, of which the defendant J. M. Broome is manager, and that she completed payment of her account on or about July 7, 1923, but that the defendants still claim that there is a balance of $2 due on her account; and that, in attempting to collect the said alleged balance, the defendants wrote and published certain writings which, taken together and separately, contained matter that was libelous to her, copies of said writings, 23 in number, being attached to the complaint and marked as exhibits.

The defendants demurred to the complaint upon the following grounds:

"That the complaint does not state facts sufficient to constitute a cause of action against this defendant, for the reason that the only cause of action alleged in the complaint is based on alleged libelous matter contained in certain letters attached to the complaint, which letters appear on their face to be harmless and nonlibelous."

The demurrer was heard by Hon. W. H. Townsend, who, on September 4, 1925, passed the following order sustaining the demurrer and dismissing the suit:

"On hearing the demurrer to the complaint in the above-entitled action, I am of the opinion that the letters attached to the complaint, on which the action for libel is based, are not libelous. It appears that the defendant contended that the plaintiff owed a debt of $2, which fact is clearly indicated by the letters, and the letters are an effort on the part of the defendant to collect this debt. There is no allegation that the plaintiff was a trader or merchant and none of special damage, and, under the terms of these letters, I do not think they support the charge of libel. For these reasons, the demurrer to the complaint is sustained."

The plaintiff appeals from this order upon the following exceptions:

"(1) Because the complaint stated a good cause of action for libel, and it was error for his Honor to hold that the written communications upon which the action is based were not libelous or actionable.

"(2) Because the written communications published under the circumstances set forth in the complaint and admitted by the demurrer were intended to and did carry a libelous meaning and charge, and were therefore actionable.

"(3) Because the written communications set forth in the complaint and published of and concerning the plaintiff were reasonably susceptible of conveying a libelous meaning or charge, and it was the province of the jury to say in what sense they were used or understood, and it was error for his Honor to hold, as a matter of law, that the letters were not libelous and actionable."

Exhibit 23 is as follows:

"Notice of Intention to Commence Action.

"Commercial Liquidating Company against Della Williams,
City of New York, County of New York, State
of New York.

"We, Commercial Liquidating Company, as claimant and party of the first part, do hereby give you, Della Williams, as debtor and party of the second part, the required ten days' notice of legal action in order that you may appear before the proper authority and show good and sufficient cause why legal action should not be brought against you by the aforesaid Commercial Liquidating Company, claimant and party of the first part, against you, the aforesaid Della Williams, as debtor and party of the second part, Della Williams, for the purpose of securing judgment for the sum of $2.00, account of Askin & Marine Company, creditor, of the City of Columbia, County of Richland, State of South Carolina. Said judgment to be collected and enforced with powers, privileges, and penalties given by law at the full discretion of the aforesaid Commercial Liquidating

Company, as claimant, against Della Williams, debtor.
Signed by J. R. McCormick, Attorney in Fact, Acting for
and in Behalf of Commercial Liquidating Company.

"Done at the City of New York, County of New York,
State of New York, this 12th day of April, A. D. 1924.
[Red Seal.]

"Know all men by these presents:

"Resolved and be it enacted, that Commercial Liquidating
Company shall not commence, or cause to be commenced,
any Court action, with the intention of making public dis-
play of the judgment thus obtained, and in all cases shall
give the party or parties against whom judgment is pro-
posed to be taken, a notice in writing of not less than (10)
days from the commencement of such action, and it is fur-
ther required that a copy of this special resolution shall be
displayed with the service of such notice.

"The laws of this State provide that all persons found
guilty of obtaining goods under false pretenses shall be
punished by fine or imprisonment, as the case shall be."

The exhibits attached to the complaint and containing the
alleged libelous matter consist of communications addressed
to the plaintiff, urging the payment of the balance claimed
to be due on her account. The language used is not always
of a mild and gentle nature, but were it not for Exhibit
23, set out above, we would have no hesitancy in affirming
the judgment of the circuit Court. Without reference to
the present case, this Court notes with regret the lament-
able lapse of business conscience into which so many of our
people have fallen within the past few years. The provoca-
tion put upon creditors by delinquent debtors who ignore
just claims is very great. But, even so, this provocation
does not remove the protection which the law throws around
the good name of every citizen until it is shown to be un-
merited.

In the present case the circuit Judge appears to have had

in mind, in passing his order dismissing the suit, that the words used were actionable only, if at all, upon the well-established principle that "words, not actionable in the case of a common person, may become so, when spoken of another, in relation to the office he fills or the trade or profession which he carries on" (*Davis v. Davis,* 1 Nott & McC., 290) or upon allegation of special damage. But we do not think the case rests upon these principles.

Language alleged to be defamatory "must be construed as a whole; that is the words must be construed in connection with other parts of the conversation or published matter, written or printed." Exhibit 23 is, as stated, one of a series of communications, alleged to have been published in the same manner, of and concerning the plaintiff and so must be construed with the other communications. But even if it be considered alone we cannot say, as a matter of law, that, taken as a whole and its parts being construed together, its language is not actionable.

Exhibit 23, after setting forth what purports to be a "Notice of Intention to Commence Action" against the plaintiff, contains this sentence:

"The laws of this State provide that all persons guilty of obtaining goods under false pretenses shall be punished by fine or imprisonment, as the case shall be."

To charge one with having committed the crime of obtaining goods or money under false pretenses is actionable *per se*. 18 A. & E. Ency. of Law (2d Ed.), 882; 36 C. J., 1202.

If, therefore, the quoted words had unquestionably referred to the plaintiff, they would have been actionable *per se*. However, they are not used directly of the plaintiff, but the language is in the form of a general statement in the third person, and this peculiar form of the language con-

stitutes what is, in our opinion, the only difficulty in the case.

It is a well-settled principle that it is not necessary that the words, in terms, should charge the crime.

"If, taking them all together, in their popular meaning, such is the necessary inference, then there is no doubt that they are actionable." *Morgan v. Livingston,* 2 Rich., 573.

In 18 A. & E. Ency. of Law (2d Ed.), at page 989, it is said:

"It is well settled that if the words used to express the charge are such, in the sense in which they would naturally be understood, as to convey to the minds of those to whom they are addressed, or to the readers of the words, the impression that the plaintiff has committed a crime, the words are actionable. It is only necessary that the words should, of themselves, or by reference to extraneous circumstances, be capable of the offensive meaning attributed to them."

In 36 C. J., at page 1153, we find:

"The effect and tendency of the language used, not its form, are the criterion by which to determine the actionable quality of the words. It is not necessary, to render words defamatory and actionable, that they shall make a defamatory charge in direct terms. It may be made indirectly, by inference, by allegorical or figurative allusion, by expression of belief or opinion, by insinuation, by mere questions, by sarcasm or irony, by words of comparison, by words of praise and congratulation, as well as by direct assertion in positive terms, and it is not less actionable because made indirectly; and it matters not how artful or disguised the modes in which the meaning is concealed, if it is in fact defamatory."

See, also, 18 A. & E. Ency. of Law (2d Ed.), 968.

The case of *Eifert v. Sawyer,* 2 Nott & McC., 511; 10

Am. Dec., 633, was an action of slander for charging the
plaintiff with having stolen iron and steel from the de-
fendant. In one count the defendant was charged with
having spoken the words by way of interrogation, and in
the other with having accused the plaintiff directly of the
larceny. The words were proved to have been spoken in-
terrogatively. This Court said:

"It is now very settled that words are to be construed
by a Court and jury in the same manner as they were or
ought to have been understood or construed by the person
to whom they were spoken. A person may convey a
charge of felony as well by way of question, as by a direct
allegation. And it must always be a question of construc-
tion, whether such is his meaning or not. The question
was therefore properly referred to the jury, and the mo-
tion for a nonsuit must be refused."

In *Davis v. Johnson,* 2 Bailey, 579, this Court said:

"The rule in verbal slander, as to the construction of
words, is that they are to be understood in their ordinary
and popular meaning. If words are susceptible of two
meanings, one imputing a crime, and the other innocent,
the latter is not to be adopted, and the other rejected, as
a matter of course. In such a case, it must be left to the
jury to decide in what sense the defendant used them."

In Odgers on Libel and Slander (1st Am. Ed.), p. 116,
it is said:

"It is not necessary that the defendant should, in so many
words, expressly state the plaintiff has committed a partic-
crime. * * * Any words which distinctly assume or
imply the plaintiff's guilt, or raise a strong suspicion of
it in the minds of the hearers, are sufficient."

In *Palmerlee v. Nottage,* 119 Minn., 351; 138 N. W.,
312; 42 L. R. A. (N. S.), 870, we find:

"A charge need not be made directly—indeed, the venom
and sting of an accusation is usually more effective when

made by insinuations. The floating calumny which each reader may affix to any and every official act which his aroused suspicion may lay hold of is capable of inflicting graver injury and injustice than a direct specific charge, which may be squarely met and refuted, if untrue."

In Odgers on Libel and Slander (1st Am. Ed.), at page 120, it is said:

"If the application to a particular individual can be generally perceived, the publication is a libel on him, however general its language may be."

In *Arizona Pub. Co. v. Harris,* 20 Ariz., 446; 181 P., 373, the Court said:

"There can be no doubt but that, had the charge been presented in a direct form, the article would have been libelous, and it is none the less libelous because the charge is stated in a form indirect or oblique."

The circumstance that the language used in the present case is general in form differentiates the case from the vast majority of cases of libel and slander, and parallel cases are not numerous. The case of *Woodling v. Knickerbocker,* 31 Minn., 268; 17 N. W., 387, however, is somewhat similar to the present case. In that case the libels alleged were placards, placed upon a table belonging to and standing in front of the place of business of Knickerbocker Furniture Company. One of the placards read:

"This was taken from Dr. Woodling, as he would not pay for it; for sale at a bargain."

And near this at the same time was placed another:

"Moral: Beware of deadbeats."

The Court said:

"These two, read together, as they were undoubtedly intended to be, constituted a gross libel. They are clearly defamatory on their face."

In the present case, on account of the general nature and the indirect form of the statement regarding "persons found

guilty of obtaining goods under false pretenses," we cannot say, as a matter of law, that the language of Exhibit 23, whether taken in connection with the language of the other exhibits or whether construed alone and as a whole, constituted a libel on the plaintiff. However, it is clear that, under all the circumstances, such language is susceptible of more than one meaning, and it is for the jury to say whether its meaning is defamatory or innocent. Exception 2 is therefore overruled; exceptions 1 and 3 are sustained.

Judgment is reversed, and case remanded to the circuit Court for trial.

MESSRS. JUSTICES WATTS, BLEASE and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE COTHRAN dissents.

MR. JUSTICE COTHRAN: Assuming, what is by no means clear, that the most objectionable of the communications, directly or indirectly, was intended to charge the plaintiff with the crime of obtaining goods under false pretenses; and taking all of the communications together, as is done in the leading opinion, I think that it is clear that the defendant intended to charge the plaintiff simply with obtaining goods under a promise which she failed to keep, which does not constitute the crime supposed to have been charged.

In *Pegram v. Styron,* 1 Bailey, 595, the action was for slander in the use of the following expression:

"He has sworn to a lie and I can prove it; and he ought to have his ears cut off—he has perjured himself,"
—as fierce an imputation of crime as could well be imagined. Quoting the language of the Court:

"The words proved in this case were understood by all the witnesses to relate to the oath, taken before Matthew Mims, Esq., a notary public, in swearing to an account, which the plaintiff rendered in to the defendant, as the administrator of David Brown, deceased."

The Court declared:

"If words spoken, unexplained, would be actionable, but, at the time they are spoken, they are so explained, as to show that they impute no legal crime, then they are not actionable, no matter how a witness may affect to understand them."

And speaking of the circumstances under which the oath was signed, the Court said:

"That was an extrajudicial oath, not in a course [Court?] of justice, and one upon which perjury could not be assigned. The words were therefore not actionable, and the motion for a nonsuit is granted."

The case of *Pegram v. Styron* (*supra*) is reaffirmed in *Cregier v. Bunton,* 2 Rich., 395, where the words were held to be actionable for the reason that they were not accompanied by an explanation which showed that no crime could have been committed in the circumstances as to which the alleged slander was spoken. It is cited with approval by Judge Freeman in 85 Am. Dec., 491, and in L. R. A., 1918-F, 153.

In *Oliveros v. Henderson,* 116 S. C., 77; 106 S. E., 855, the Court adopted the decree of his Honor Judge Rice in which he said:

"In determining whether words are libelous or slanderous. they must be given their ordinary, popular meaning, unless, however, the defendant, at the time such words were used, modifies or explains the meaning which he gives them to mean [as?] something other than their ordinary, popular meaning."

In *James v. W. U. Tel. Co.,* 130 S. C., 533; 126 S. E., 653, an exception assigning error in the refusal of the following request to charge was sustained:

"The Court instructs the jury that, even though the *words* in question would, from the ordinary meaning of the expression used, imply a crime, yet they are not actionable *per se* as charging such a crime if they were used, and were

understood by the readers or hearers to be used, with reference to acts or conduct on which no such crime could be predicated and from which no libelous charge could be inferred."

The Court declared:

"The proposition of law is sustained by *Van Rensselaer v. Dale* [Dole] 1 Johns. Cas. (N. Y.), 279. *Hayes v. Ball,* 72 N. Y., 418. Newell on Sland. & Lib. (3d Ed.), 364, 369. *Pegram v. Styron,* 1 Bailey, 595. *Shecut v. McDowell,* 3 Brev., 38; 5 Am. Dec., 536.

"In *Pegram v. Styron,* 1 Bailey, 595, it was held [quoting syllabus] :

" 'Although the words spoken import a criminal charge, yet if they are explained at the time, or are understood by the persons who hear them, to refer to a matter not criminal, they are not actionable, without special damage.'

"Possibly 50 cases are cited in the [First] Decennial Digest, title 'Libel and Slander,' key No. 19, which also sustain the proposition."

I think, therefore, that his Honor Judge Townsend was entirely right in sustaining the demurrer.